UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ARNOLDO LOPEZ, § | |
| No. 5282380, § | |
| § | |
| V. § | SA-17-CV-1024-XR |
| § | SA-12-CR-00944-XR(3) |
| UNITED STATES OF AMERICA § | |

## ORDER

Before the Court are Movant Arnoldo Lopez's ("Lopez") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 246), Lopez's Memorandum in support thereof (ECF No. 247), and the Government's Response (ECF No. 250). Lopez is proceeding *pro se*. For the following reasons, the § 2255 motion (ECF No. 246) is **DENIED**.

## BACKGROUND

A grand jury indictment returned October 17, 2012, charged Lopez with possession of a controlled substance with intent to distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B)(iii), and 18 U.S.C. § 2 (Count I); possession of a firearm in furtherance of a drug trafficking offense and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count II); conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii) (Count III); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count IV). (ECF No. 18). Lopez was subsequently charged by grand jury superseding indictment in cause number SA-12-CR-860(5) with conspiracy to make false statements on records of a licensed federal firearms dealer and aiding and abetting in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A) (Count I); and knowingly making false statements on records of a licensed federal firearms dealer and aiding and abetting in violation of 18 U.S.C. §§ 2 and 924(a)(1)(A) (Counts VI, VII, IX, XVI and XVII). (ECF No. 68).

Pursuant to a plea agreement, Lopez pleaded guilty in cause number SA-12-CR-944 to possession of a controlled substance with intent to distribute (Count I), and possession of a firearm in furtherance of a drug trafficking offense (Count II).[1] (ECF No. 92). In exchange for his plea, the Government agreed to dismiss the remaining counts in cause number SA-12-CR-944 once the sentence was imposed. (ECF No. 18 at 2). The Government also agreed Lopez should receive a two-level downward adjustment for acceptance of responsibility. (ECF No. 18 at 8). Additionally, the Government agreed that, if the Court determined Lopez was entitled to the adjustment and further found his base offense level was at least level 16, then at sentencing the Government would move for an additional one-level reduction based on Lopez's timely agreement to plead guilty. (Id.).

A Presentence Investigation Report ("PSR") was prepared, which assessed Lopez's offense level as 49 in cause number SA-12-CR-944, and as 38 in cause number SA-12-CR-860(5). (ECF No. 137 at 23). The PSR assessed Lopez's criminal history category as IV and in cause number SA-12-CR-944, calculated a guideline sentencing range of 480 months for Count I and 60 months for Count II. (Id. at 32). In July of 2014, Lopez was sentenced in cause number SA-12-CR-944 to 420 months as to Count I and 60 months as to Count II, with both sentences to run consecutively. (ECF No. 192). Additionally, Lopez was sentenced in cause number SA-12-CR- 860(5) to 60 months as to Counts I, VI-VII, IX, and XVI-XVII of the superseding indictment. (ECF No. 68). Lopez's sentence in cause number SA-12-CR-860(5) was ordered to run concurrently with his sentence in cause number SA-12-CR-944.

Lopez appealed his conviction and sentence, maintaining his plea was unknowing and involuntary because the Court did not comply with Rule 11 during the plea colloquy; there was

---

[1] Lopez also pleaded guilty in SA-12-CR-860(5).

prosecutorial misconduct at sentencing; and his sentence was greater than necessary. (ECF No. 228 at 3). On November 16, 2015, the Fifth Circuit affirmed the trial court's judgment. (ECF No. 228). Almost two years later, Lopez filed the present motion pursuant to 28 U.S.C. § 2255, maintaining he was denied effective assistance of counsel and sentenced based on an unconstitutional application of 28 U.S.C. § 841. (ECF No. 246). In his memorandum, Lopez complains of the following: 1) his plea was unknowing and involuntary due to ineffective assistance of counsel; 2) the Government breached the plea agreement by mentioning his association with the Zetas; 3) counsel rendered ineffective assistance by incorrectly advising Lopez no testimony would be presented during sentencing and in not obtaining the three point reduction for Lopez's acceptance of responsibility; and 4) both sections 841 and 846 were unconstitutionally applied and the trial court lacked jurisdiction. (ECF No. 247).

### A. Legal Standard

A federal defendant may move to vacate, set aside, or correct his sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). A one-year period of limitation applies to a § 2255 motion. *See Kiser v. Johnson*, 163 F.3d 326, 327-28 (5th Cir. 1999). The limitation period runs from the latest of:

1) the date on which the judgment of conviction becomes final;

2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (2016).

Here, the Fifth Circuit's judgment/mandate was entered on November 16, 2015, and Lopez's conviction became final on February 16, 2016. The one-year § 2255 limitations period began running the next day and expired February 16, 2017. *Clay v. United States*, 537 U.S. 522, 532 (2003); SUP. CT. R. 13 (a petition for a *writ of certiorari* must be filed within 90 days after entry of the judgment or the denial of rehearing). Lopez's § 2255 motion, dated and deemed filed on October 4, 2017, is, therefore, untimely.

Recognizing this procedural error, Lopez states that "while [he] was in the SHU at USP CANAAN", he "mailed out what would have been a timely 28 U.S.C. § 2255 motion" by "giving his LEGAL MAIL/MOTION to a correctional officer" only to later learn from the Court that his motion had not been received. Lopez states he wrote to the Court on July 31, 2017, explaining his position, and was mailed the 28 U.S.C. § 2255 form. However, Lopez does not provide the date he initially gave his motion to a correctional officer nor submit any evidence showing that he, in fact, did so. Further, although Lopez claims he delivered a completed § 2255 motion to a correctional officer sometime prior to February 16, 2017, he did not file his § 2255 motion until October 10, 2017, over two months after learning his motion had not been received. (ECF No. 246). In any event, for reasons discussed below, Lopez's motion also fails on substantive grounds.

### B. Waiver of the Right to a Collateral Attack

A defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary. *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994).

> "[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."

*McKinney*, 406 F.3d at 746 (quoting *Portillo*, 18 F.3d at 293).

A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746-47). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances − even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998).

The Supreme Court's decision in *Boykin v. Alabama* requires a hearing prior to entry of a guilty plea, at which the Court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made. 395 U.S. 238, 243 (1969); *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides

procedural safeguards for assuring guilty pleas are voluntary and knowing, by requiring a judge to ensure the defendant understands the law governing his crime in relation to the facts of his case, as well as his rights as a criminal defendant. *United States v. Vonn*, 535 U.S. 55, 62 (2002).

However, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal or collaterally attack his conviction and sentence, does not require the trial court to conclude the defendant has a perfect understanding of the consequences; the Court must only establish the defendant understands the charges and has a realistic understanding of the consequences. *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The Court must also ensure there was no coercion to enter the guilty plea. *Id.* Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

Lopez contends he agreed to plead guilty based on his counsel's misrepresentations that his anticipated offense level would be 34 or 36, he would receive a reduction for acceptance of responsibility, and the Government would not offer testimony at sentencing. Lopez asserts that because his guideline level was greater than estimated, he did not receive a reduction for acceptance of responsibility, and the Government presented witnesses during sentencing, his plea was not knowingly or voluntarily entered.

Nevertheless, during his Rule 11 hearing, Lopez stated he understood what he was charged with and agreed he had sufficient time to discuss his cases with his attorney, including discussing any defenses he may have had to the charges against him. (ECF No. 213 at 4). Additionally, Lopez acknowledged receiving both indictments and stated he voluntarily signed both plea agreements after carefully reading them and going over them with his attorney. (ECF No. 213 at 7). Lopez also

admitted the factual basis for his plea was true and stated he understood he was giving up his rights to a trial and an appeal. (ECF No. 213 at 7-8). Lopez was informed about the statutory range of punishment he faced on each charge pursuant to his guilty plea, and stated he understood his potential sentences. (ECF No. 213 at 9-10). Finally, Lopez stated he understood everything discussed during the hearing, including how much jail time he could receive, and still wanted to plead guilty. (ECF No. 213 at 10).

Lopez fails to meet the high burden of proving his plea was not knowing and voluntary because his testimony at his Rule 11 hearing trumps his current claims to the contrary. *United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (giving a defendant's statements during their plea "colloquy greater weight than . . . unsupported, after-the-fact, self-serving revisions").

Accordingly, the Court concludes Lopez's guilty plea and his waiver of his right to appeal or collaterally attack his conviction and sentence was knowing and voluntary.

### C. Ineffective Assistance of Counsel

Even if a defendant waives his right to appeal or collaterally attack his plea and sentence, he can avoid those waivers based on a claim of ineffective assistance of counsel if he shows "the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). Otherwise, if an appeal and collateral attack waiver barred ineffective assistance of counsel claims with respect to those very waivers, "an impermissible boot-strapping" could occur by the preclusion of review of a waiver or plea which itself was not voluntary. *Id.*

An ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim, i.e., the standard set forth in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate counsel's performance was deficient and the deficient performance prejudiced his defense. *Id.* at 687. The failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The proper standard for attorney performance is that of reasonably effective assistance. *Id.* at 688. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show considering all the circumstances that counsel's representation fell below an objective standard of reasonableness. *Id*. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 687-689. To determine whether counsel's performance was constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. Furthermore, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

Further, when a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To establish prejudice arising from counsel's alleged deficiencies, Movant must show that, but for counsel's alleged deficiencies, he "would have [had] a reasonable chance of obtaining a more favorable

8

result," i.e., a sentence of less than forty years. *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir.) (en banc), *cert. denied*, 137 S. Ct. 236 (2016).

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. In this analysis, a defendant's sworn statements made to the Court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

### D. Discussion

#### 1. Ground One

Lopez contends his trial counsel rendered ineffective assistance in misrepresenting the following: that his anticipated guideline level would be 34 or 36; he would receive a reduction for acceptance of responsibility; and the Government would not offer testimony at the sentencing hearing. He maintains that instead he was sentenced based on a Total Offense Level of 40; he did not receive a reduction for acceptance of responsibility; and the Government presented witnesses that resulted in a higher sentence being imposed. However, Lopez did not receive the three-point reduction for acceptance of responsibility because, after signing the plea and without his attorney's knowledge, Lopez provided an affidavit to his co-defendant, who later pleaded guilty and admitted the affidavit was false. (ECF No. 215 at 24-26). The Court found this behavior amounted to obstruction of justice. (Id.). Further, because the Government was unaware, at the time the plea was signed, that Lopez intended to provide this affidavit, the Court concluded there was a denial of

9

acceptance of responsibility and refused to grant Lopez a reduction. (Id.). Thus, the fact that Lopez did not receive a reduction for acceptance of responsibility was not due to any deficiency on the part of his attorney, who argued vehemently that the reduction should be given (ECF No. 214 at 11-17), but rather, was the consequence of Lopez's own subversive act.

Had Lopez not attempted to deceive the Court, in all likelihood, he would have received the three-point reduction, and his total offense level would have been 37. Although Lopez now complains his attorney rendered ineffective assistance in estimating his offense level would be 34 or 36, an erroneous sentencing prediction by counsel is not ineffective assistance of counsel. *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). In any event, a one point variance hardly establishes that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Lopez admitted the factual basis for his plea was true; confirmed he discussed the plea agreement, the facts of his case and the potential defenses to the charges with counsel; and stated he understood the plea agreement, the charges against him, the range of punishment he was facing, as well as his rights to a trial and an appeal. (ECF No. 213 at 4-9). A defendant's sworn statements made to the Court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Lopez also complains his counsel was ineffective in advising him that the Government would not present testimony at sentencing. Nevertheless, had Lopez gone to trial, the Government would have, in all likelihood, presented considerably more witnesses and elicited even more

damaging testimony. Further, Lopez's guideline range in cause number SA-12-CR-944 was 480 months to life imprisonment as to Count I; yet, due, in large part, to his counsel's effectiveness, Lopez was sentenced to 420 months. (ECF No. 192). Lopez offers no facts to support his claims and fails to show a reasonable probability that, but for counsel's errors, he would have received less time in prison. *Batamula,* 823 F.3d at 240.

Based on the foregoing, Lopez's claim of ineffective assistance of counsel is **DENIED**.

### 2. Ground Two

Lopez next contends the Government breached the plea agreement by mentioning his association with the Zetas. This claim fails for several reasons. First, nothing in the plea agreement prohibits mention of Lopez's association with the Zetas. Second, in admitting to the factual basis for his plea, Lopez conceded he had a source of supply that was related to the Los Zetas drug cartel. (ECF No. 68 at 5). Given his admission, any discussion of Lopez's association with the Zetas could hardly amount to error. Finally, Lopez raised this same complaint on appeal. The Fifth Circuit affirmed Lopez's conviction, finding that Lopez "[had] not . . . established that the prosecutor's actions constituted error, plain or otherwise." (ECF No. 228). Because this issue was raised and disposed of in a previous appeal from an original judgment of conviction, Lopez is barred from raising it in his § 2255 Motion. See *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). Lopez's claim is, therefore, **DENIED**.

### 3. Ground Three

Lastly, Lopez contends that 21 U.S.C. §§ 841 and 846 were unconstitutionally applied and his indictment should be dismissed because the trial court lacked jurisdiction. Lopez argues Congress did not have the authority to make every drug-related offense a federal crime (i.e., both

interstate and intrastate offenses), and the lack of a jurisdictional element in §§ 841 and 846 amounts to an unconstitutional silent presumption of federal jurisdiction over all drug offenses. Lopez did not raise this issue on direct appeal and therefore, "must show both cause for his procedural default and actual prejudice due to any such errors." *Placente*, 81 F.3d at 558. Lopez fails to meet this burden.

Further, Lopez's contentions are foreclosed by Fifth Circuit opinions holding that §§ 841 and 846 are valid exercises of Congress' commerce power and properly regulated pursuant to federal law. *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993); *United States v. Lopez*, 2 F.3d 1342, 1367 n.50 (5th Cir. 1993), *aff'd*, 514 U.S. 549 (1995) (reaffirming that all drug trafficking, intrastate as well as interstate, is subject to regulation under the Commerce Clause); *see also United States v. Britt*, 112 F. App'x 352, 356 (5th Cir. 2004).

Accordingly, Lopez's complaint lacks merit and is **DENIED**.

## CONCLUSION

Lopez's § 2255 motion was untimely filed and this factor alone warrants dismissal. In any event, Lopez entered a knowing and voluntary guilty plea pursuant to a plea agreement in which he waived his right to appeal or collaterally attack his conviction and sentence. Further, Lopez has not shown he was denied his right to the effective assistance of counsel or that this Court lacked jurisdiction.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings,

the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the movant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where the Court rejects a movant's constitutional claims on the merits, "the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

> When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.*

In this case, reasonable jurists could not debate the denial of Lopez's § 2255 motion on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

**IT IS ORDERED** that Movant Arnoldo Lopez's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 246) is **DENIED**.

**ADDITIONALLY IT IS ORDERED** that a certificate of appealability is **DENIED**.

It is so ORDERED.

SIGNED this 12th day of June, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE